# In the United States Court of Federal Claims

Nos. 23-2168 & 23-2169
Filed: August 8, 2025
Re-Issued: August 22, 2025[1]

---

|  |  |
|---|---|
| JVP & C. DEVELOPMENT S.A. – ERGOTEM S.A. and ERGOTEM S.A., | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| *Defendant*. | ) ) ) |

---

## OPINION AND ORDER

This discovery dispute stands as proof of the adage that "proper preparation prevents poor performance." Here, the parties did not properly prepare to engage in discovery, and now they challenge each other's (not ideal) discovery performance. They could easily have avoided this kerfuffle. It is with this realization in mind that the court takes this opportunity to offer a humble suggestion to these parties and others—confer meaningfully with each other. This court's rules are riddled with provisions that encourage—if not require—parties to confer with each other regarding discovery matters. *E.g.*, RCFC 16, 26, 29, 37, & App'x A ¶¶ 3, 4, 5, 10. This does not mean simply writing letters to each other complaining about each other's discovery efforts. Simple discussions would have gone a long way to resolving all of the present disputes.

## I.    Background

The United States Naval Facilities Engineering Systems Command (the "Navy") contracted with Plaintiff JVP & C. Development S.A. – Ergotem S.A. (the "JV"), a joint venture of JVP & C Development S.A. and Ergotem S.A., for the construction on a "Medical/Dental facility at Camp Lemonnier, Djibouti." ECF No. 1 ¶ 1; ECF No. 17 ¶ 1. The Navy also contracted with Plaintiff Ergotem S.A. ("Ergotem") for the construction of a "Fuel Storage Facility" at Camp Lemonnier. Case No. 23-2169, ECF No. 1 ¶ 1[2]; ECF No. 43 ¶ 1. The Navy

---

[1] The court initially filed this Opinion and Order under seal to allow the parties to propose redactions. The parties informed the court that no redactions are necessary, so the court now re-issues this Opinion and Order in full. ECF No. 58.

[2] When necessary, the court cites Ergotem's complaint filed in Case No. 23-2169, but all other pertinent filings appear on the docket for Case No. 23-2168.

terminated both contracts for default on January 6, 2023.  ECF No. 1 ¶ 1; Case No. 23-2169, ECF No. 1 ¶ 1; ECF No. 17 ¶ 1; ECF No. 43 ¶ 1.

The JV and Ergotem brought separate claims challenging the terminations for default and seeking more time to finish their contracts.  ECF No. 1; Case No. 23-2169, ECF No. 1.  The court consolidated these cases "for purposes of coordinated discovery and motions practice." ECF No. 16.  The subsequent discovery scheduling order set fact discovery to close on March 17, 2025.  ECF No. 21.

On February 6, 2025, the Government moved to amend its answer to Ergotem's complaint to add a fraud counterclaim based on documents produced in discovery in December 2024.  ECF No. 35 at 3, 8–9.  The court granted the Government's motion to amend, ECF No. 41, and the Government promptly filed its amended answer, ECF No. 43.

The parties also hit an impasse in their discovery efforts.  The Government moved to compel Plaintiffs to respond to eight discovery requests and moved for a protective order from Plaintiffs' second and third sets of discovery requests.  ECF No. 39.  Plaintiffs moved for relief under the court's protective order.  ECF No. 46.

## II.    Standard of Review

The scope of discovery is broad:

> [P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

RCFC 26(b)(1).  But the court may limit discovery if it determines one or more of the following:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by RCFC 26(b)(1).

RCFC 26(b)(2)(C).  The resolution of discovery matters falls within the discretion committed to this court.  *Adkins v. United States*, 856 F.3d 914, 916 n.2 (Fed. Cir. 2017).

Many of the provisions in this court's discovery rules may be altered by the parties if they so choose. *See, e.g.*, RCFC 29(a) ("[T]he parties may stipulate that . . . procedures governing or limiting discovery be modified . . . ."); RCFC 33 (permitting a stipulation under RCFC 29 to alter the standard procedures for interrogatories); RCFC 34(b)(2)(A) (allowing the parties to alter the time to respond to requests for production of documents via a stipulation under RCFC 29). The parties did not enter any such discovery stipulation in this case. Thus, this court's discovery rules govern the parties' discovery disputes.

As relevant to the parties' motions, the court may issue a protective order and may order discovery. RCFC 26(c). The court may issue a protective order for good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." RCFC 26(c)(1). Good cause for a protective order "requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." *Forest Prods. Nw., Inc. v. United States*, 453 F.3d 1355, 1361 (Fed. Cir. 2006). The court may order a party to provide discovery "on just terms." RCFC 26(c)(2).

## III.    Motion to Compel

The Government's motion to compel, ECF No. 39, seeks to re-open and restart discovery; it moves to compel Plaintiffs to "identify, preserve, and collect" documents responsive to eight requests for production of documents sent to each Plaintiff and further to do so in "compliance with the Civil Division production specification." ECF No. 39 at 1. Should the court agree with the Government and order Plaintiffs to make those requested productions, the Government seeks 90 more days to seek discovery against Plaintiffs. *Id.* at 2.

The court does not order the parties to restart discovery, but grants-in-part the Government's motion. Given the recently added fraud counterclaim and the time needed to satisfy specific requests for production of documents discussed below, the court re-opens discovery for 120 days. Fact discovery shall now conclude on December 8, 2025. The parties should not expect the court to extend that date any further.

### A.    Plaintiffs must produce additional responsive documents.

An underlying concern of the Government is the role of Mr. Christodoulos Hadjidimoulas during document production. *See* ECF No. 39 at 5–7. Mr. Hadjidimoulas worked on both projects at issue here. ECF No. 47 at 4. And he is the person that led document collection efforts for Plaintiffs. *See* ECF No. 39 at 5–7; ECF No. 47 at 2–3. The Government questions his efforts given that Mr. Hadjidimoulas is a central player in the Government's fraud counterclaim. ECF No. 39 at 5–7, 9.

The Government's motion is not heavy on details as to what documents it believes were not collected with one exception. Based on documents that have been produced to the Government, Mr. Hadjidimoulas asked Mr. Giorgos Kotoulas, a project manager on the medical/dental facility project, for emails he exchanged with some suppliers. ECF No. 39-1 at

Appx007.[3]  Good so far.  But Mr. Hadjidimoulas also told Mr. Kotoulas in that same email that he did not need emails exchanged with some of the other suppliers.  *Id.*  The Government points to this email from Mr. Hadjidimoulas as evidence that Plaintiffs' document production was incomplete and that Mr. Hadjidimoulas "suppress[ed] evidence."  ECF No. 39 at 5–7.

Because the Government's fraud counterclaim also turns on Mr. Hadjidimoulas's conduct—he allegedly submitted false documents to support Ergotem's claims—the Government argues Mr. Hadjidimoulas's influence over Plaintiffs' document collection further reflects "his and [P]laintiffs' intent to defraud the [G]overnment."  ECF No. 39 at 6–7.  But when pressed, the Government could not point to any other documents that it has reason to believe exist and were not produced.  And Plaintiffs contend that even if Mr. Hadjidimoulas erred in not collecting emails with other suppliers (he did), the emails that he did not collect were duplicative of emails already produced.  The court has no basis to agree or disagree, but in any event the different emails constitute different documents for discovery purposes and need to be produced.  Certainly, if Plaintiffs were trying to defraud the Government, they would not have produced the emails from another source.

The Government also argues Plaintiffs' document collection practices indicate bad faith.  ECF No. 39 at 8–9.  Specifically, the Government describes Mr. Hadjidimoulas's collection of documents as "improper custodian self-collection and self-selection" of documents.  *Id.* at 8.  The Government raised concerns about Plaintiffs' document collection practices in emails with Plaintiffs, and it argues Plaintiffs failed to address its concerns, in turn demonstrating bad faith.  *Id.* at 8–9; ECF No. 39-1 at Appx001–04; ECF No. 49 at 7.  Additionally, because Plaintiffs' response admits that they intended to make productions on a rolling basis, ECF No. 47 at 17–18, the Government contends Plaintiffs' intent to make rolling productions without reaching an agreement with the Government to permit such productions is further indicative of their bad faith, ECF No. 49 at 6–7.

Plaintiffs contend they conducted discovery in good faith, and the Government's arguments to the contrary "grossly mischaracterize[] the Plaintiffs' efforts to fulfill discovery obligations."  ECF No. 47 at 8, 18.  Plaintiffs state they conducted discovery "under the oversight of counsel."  *Id.* at 18.  They explain that Mr. Hadjidimoulas told Mr. Kotoulas that he did not need emails with specific suppliers because "they were already provided by other custodians."  *Id.* at 9 (emphasis omitted).  Thus, Mr. Hadjidimoulas did not suppress evidence but was merely avoiding duplicative efforts.  *Id.* at 8.  Plaintiffs also note that they proposed custodians and search terms in June 2024, to which the Government never responded, so they argue the Government prevented "a more automated and efficient process."  *Id.* at 1–2, 18; ECF No. 47-1 at 1–2.  If only the Parties had communicated with each other and planned their discovery . . . .

Further, Plaintiffs detail their document collection efforts:

- On September 20, 2024, Mr. Hadjidimoulas emailed four potential document custodians and "requested assistance in locating any documents responsive to" the

---

[3] Page 7 of the Government's appendix to its motion to compel is an English translation of an email originally sent in Greek.  ECF No. 39-1 at Appx005–07.

Government's discovery requests.  ECF No. 47 at 2–3.  Mr. Hadjidimoulas "also identified if he needed help locating specific types of documents or if he did not need assistance because he already had the documents."  *Id.* at 3.

- On October 14, 2024, Plaintiffs produced the project files for both the medical/dental facility and fuel storage facility projects, which included "documents related to subcontracts, contracts with suppliers, supplier offers and the Plaintiffs' acceptance of those offers, documents related to the delay, time impact analysis, documents related to the claim, invoices from subcontractors and suppliers, attendance sheets, payroll, and documents related to the response to the show cause letter."  *Id.*

- On December 6, 2024, Plaintiffs produced emails responsive to the Government's discovery requests.  *Id.* at 4.  Plaintiffs collected all emails from the official email addresses used for the medical/dental facility and fuel storage facility projects and produced all responsive emails from those email addresses.  *Id.*  They also collected all emails and then produced all responsive emails from the email addresses for Mr. Ioannis Aretakis, the "Quality Control Manager for the Fuel Storage Facility from October 2018 to March 2021"; Mr. Ioannis Eleftheriou; and Mr. Nikos Mousouris, a "Procurement Manager" and "the Project Manager of the Fuel Storage Facility from June 2022 until January 2023."  *Id.* at 3, 5–6.  Plaintiffs further produced responsive emails from the email addresses for Mr. Hadjidimoulas; Mr. Kotoulas; Ms. Margarita Toumasi, "a member of the Procurement Department responsible for the materials and equipment provided and/or ordered for the Projects"; Mr. Dimitrious Sakellios, the owner of Ergotem; although they did not represent that they collected all emails from those email addresses.  *Id.* at 4–5, 7.

- On February 5, 2025, Plaintiffs produced additional emails "related to the entrance ban and communications with certain suppliers" for the fuel storage facility project.  *Id.* at 7.

- On February 12, 2025, Plaintiffs produced third-party documents they received from Leo A. Daly and Austin Brockenbrough & Associates.  *Id.*

Plaintiffs attached to their response the September 20, 2024, email from Mr. Hadjidimoulas, which requests help with document collection.  ECF No. 47-2.[4]  In that email, Mr. Hadjidimoulas lists the Government's discovery requests but does not request any documents from the custodians for some of the Government's requests.  *Id.* at 1–7.  For some of the discovery requests, he notes he does not need anything from the custodians because he already has certain documents.  *Id.* at 1, 5–6.  Again, Plaintiffs explain that certain documents were not requested from other custodians, like Mr. Kotoulas, because other custodians provided those documents.  ECF No. 47 at 9.

---

[4] Mr. Hadjidimoulas's email attached to Plaintiffs' response is an English translation of an email originally sent in Greek.  ECF No. 47-2 at 8.

Under Rule 34, the following procedures apply to productions:

> (i)      A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii)      If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii)      A party need not produce the same electronically stored information in more than one form.

RCFC 34(b)(2)(E). The Government's request for Plaintiffs to comply with the Civil Division production specification would impose a greater burden on Plaintiffs than Rule 34 requires, so the court does not now order compliance with the Civil Division production specification.

Yet Plaintiffs' document collection fell short of the requirements of Rule 34. While Rule 34 does not require Plaintiffs to produce the same information "in more than one form," that limitation does not remove Plaintiffs' obligation to collect all potentially responsive documents first. The record indicates Plaintiffs did not collect all potentially responsive documents from at least Mr. Hadjidimoulas, Ms. Toumasi, and Mr. Sakellios as they did not collect all their emails. Thus, Plaintiffs did not meet their discovery obligations. The Government's requests for production state that different copies of the same document constitute different documents, meaning Plaintiffs should have collected and produced them.

Although Plaintiffs did not satisfy their discovery obligations, their discovery deficiencies do not indicate bad faith. The Government's own appendix filed with its motion shows Plaintiffs attempted to cure their discovery deficiencies each time the Government contacted them. Plaintiffs responded to each of the Government's letters regarding their discovery efforts. ECF No. 39-1 at Appx008–13, Appx041–47. In their responses, Plaintiffs agreed to provide additional productions and explained their discovery efforts. *Id.* at Appx008–13, Appx041–47. Plaintiffs' responses and continued efforts to cure their discovery deficiencies demonstrate that they did not conduct discovery in bad faith.

### B.      Plaintiffs must produce additional documents responsive to Government Request Nos. 2–3, 7, 14–17.

The court orders Plaintiffs to produce limited compelled discovery. The Government does not identify specific documents that are missing from Plaintiffs' production;[5] it does not

---

[5] The Government presented a Djiboutian laborer arbitration decision to the court during the hearing. ECF No. 56 at 62–63. It did not learn about this arbitration until it received documents from a third-party subpoena. *Id.* at 25–26. Because the Government had not heard about the arbitration or received other document productions about it, it argued that the arbitration was an example of an issue on which it lacks documents. *Id.* at 30–31. Plaintiffs argued Djiboutian laborer disputes are irrelevant to their claims because their contracts primarily pertained to

identify any documents that are referenced in produced documents but not themselves produced.[6]  Rather, it argues Mr. Hadjidimoulas's collection of documents was insufficient and yielded an incomplete discovery set.  ECF No. 39 at 5–8.  The Government contends that Plaintiffs did not include adequate metadata with their produced documents and that their document productions were insufficient for the Government's requests for production of documents (each referred to as "Government Request No.") 2–3, 7, 14–17, and 19.[7]  *Id.* at 1.

At this time, the Government has not provided a sufficient basis for the court to order Plaintiffs to redo all their document production or wholesale reopen discovery.  Rather, the court orders a narrow scope of compelled discovery based on the specific problems identified in the Government's motion.  The court reminds Plaintiffs to make all remaining productions consistent with Rule 34, which requires productions "as they are kept in the usual course of business or . . . organize[d] and label[ed] . . . to correspond to the categories in the request."  For the avoidance of doubt, Plaintiffs need not comply with the Civil Division production specification.

       1.   <u>Metadata Issues.</u>

As a result of Plaintiffs' document collection practices, the Government complains Plaintiffs did not properly produce document metadata.  ECF No. 39 at 8–9; ECF No. 49 at 5–6.  Plaintiffs, however, responded to the Government's concerns regarding the metadata in their November 4, 2024, production, by sending a load file on December 6, 2024, with all the missing metadata.  ECF No. 47 at 17.  And Plaintiffs provided all the metadata for the documents in their second production set on December 6, 2024.  *Id.*  Plaintiffs went further.  They contend that

---

foreign laborers.  *Id.* at 66–67.  Because this issue was raised for the first time at the hearing, the parties could not have attempted to confer in good faith.  *See* RCFC 7.3 (setting the requirements of a certification of an attempt to confer in good faith); RCFC 37(a)(1) (requiring motions to compel to "include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action").  Thus, the court does not decide now whether a further inquiry into the Djiboutian laborer arbitration is necessary, and the parties shall make every effort to confer in good faith and make any necessary productions to resolve this dispute without the court's involvement during the new discovery period.

[6] Nothing in this Opinion and Order prevents the Government from filing a subsequent motion to compel the production of any specific missing documents that it may identify; however, the court reminds the Government of its obligation to first confer with Plaintiffs in good faith before filing such a motion.

[7] The Government separately sent its discovery requests to the JV and to Ergotem.  ECF No. 39-1 at Appx086–102.  The parties do not distinguish between the Government's discovery requests sent to each Plaintiff, and Government Request Nos. 2–3, 7, 14–17, and 19 sent to the JV and to Ergotem are materially the same, with the relevant Plaintiff's name changed.  *See* ECF No. 39 at 1; ECF No. 39-1 at Appx086–102; ECF No. 47 at 8, 10–16 & n.2; ECF No. 49 at 8–10.  Accordingly, the court does not distinguish between the Government's discovery requests sent to the JV and to Ergotem, and addresses them together.

certain metadata fields the Government requested were not part of the "metadata that is captured from the native files themselves," so they "manually incorporated" those metadata fields "into the load file." *Id.* at 17–18. The Government, however, found Plaintiffs' efforts to resolve the metadata issues unacceptable and that Plaintiffs promised to send a metadata overlay by March 19, 2025. ECF No. 49 at 5–6.

Recall that the parties did not agree to a discovery stipulation in this case. Thus, the parties did not formally agree on their methods of document production, including how to produce metadata. Recall, too, that Rule 34 requires Plaintiffs to produce documents "as they are kept in the course of business or [to] organize and label them to correspond to the categories in the request." RCFC 34(b)(2)(E)(i). Plaintiffs' explanation of their efforts to produce metadata indicates they produced documents and the corresponding metadata as the documents were kept in the course of business. And when the Government raised concerns with those productions, Plaintiffs attempted to cure the metadata deficiencies by organizing and labeling the metadata further. *See* ECF No. 47 at 16–18. Thus, Plaintiffs' metadata productions comply with Rule 34. Plaintiffs do not need to redo their document production to cure alleged metadata deficiencies.

If the Government determines that issues remain for *specific* documents' metadata, it should first raise those issues with Plaintiffs and make every effort to resolve those issues in good faith without the court's involvement. Only if the parties cannot reach a resolution on their own may the Government file a follow-on motion where it identifies *specific* documents that lack sufficient metadata and move to compel production of those *specific* documents' metadata.

2.     Plaintiffs must produce any documents from Mr. Sakellios, Mr. Panayiotopoulos, Ms. Toumasi, and Mr. Hadjidimoulas that are responsive to Government Request Nos. 2–3, 7, and 14–15.

Government Request Nos. 2–3, 7, and 14–15 seek documents directly relating to Plaintiffs' contract claims. Specifically, the Government requests subcontract and supplier documents and correspondence relating to subcontractors, suppliers, or other third parties; documents supporting Plaintiffs' delay claims and any efforts to mitigate delays; and documents relating to Plaintiffs' concrete supply. ECF No. 39-1 at Appx088–89, Appx091, Appx097–98, Appx100.

As the court explains above, Plaintiffs' discovery efforts did not fully comply with their discovery obligations. But the court will not permit a roving inquiry into all possibly responsive documents. Further discovery must focus on potential responsive documents from the custodians identified at the hearing.

At the hearing, the Government identified Mr. Sakellios, Mr. Mousouris, Mr. Christos Panayiotopoulos (the owner of the JV), Mr. Kotoulas, Ms. Toumasi, and any other project managers for either project as individuals who potentially hold additional responsive documents. ECF No. 56 at 78–79. Plaintiffs already collected all emails from Mr. Mousouris's email. ECF No. 47 at 6. They likewise collected all emails from the project managers' shared email addresses. *Id.* at 4. Thus, they need not conduct a further inquiry into those emails.

On the other hand, Plaintiffs have not represented that they collected all emails from the email addresses for Mr. Sakellios, Mr. Panayiotopoulos, Mr. Kotoulas, Ms. Toumasi, or Mr. Hadjidimoulas—a project manager. Plaintiffs did not represent that they collected *any* emails from Mr. Panayiotopoulas. Given that Mr. Hadjidimoulas instructed custodians not to collect all potentially responsive documents and the lack of confirmation that all possible responsive, even if duplicative, documents from these custodians were collected, Plaintiffs must take further action to ensure their discovery obligations are met for these custodians.

With respect to Mr. Kotoulas, Plaintiffs did not request all the emails from his email address because he used a personal email address. ECF No. 47 at 10. Plaintiffs state that Mr. Kotoulas cooperated with Plaintiffs "to produce more than 18,000 emails" from his personal account. *Id.* at 10 n.3. The court only compels discovery "on just terms," *see* RCFC 26(c)(2), and ordering a further inquiry into Mr. Kotoulas's personal email address containing many other non-discoverable and personal emails would not be just. So Plaintiffs do not need to collect additional emails from Mr. Kotoulas.

A further inquiry into the *business* email addresses of Mr. Sakellios, Mr. Panayiotopoulos, Ms. Toumasi, and Mr. Hadjidimoulas would be just. The same concerns animating the court's limit on a further inquiry into Mr. Kotoulas's personal emails do not apply to these *business* email addresses. Accordingly, the court orders Plaintiffs to collect all emails from the business email addresses for Mr. Sakellios, Mr. Panayiotopoulos, Ms. Toumasi, and Mr. Hadjidimoulas; and to produce all documents responsive to Government Request Nos. 2–3, 7, and 14–15 from those emails.

       3.    <u>Plaintiffs must produce any additional documents that indicate the time spent on either project as responsive to Government Request No. 16.</u>

The Government moves to compel the production of additional documents responsive to Government Request No. 16. Government Request No. 16 seeks "[a]ll documents detailing the time working on the project day by each of your employees, subcontractors, or other personnel working at the project site" from both the JV and Ergotem. ECF No. 39-1 at Appx092, Appx101. Plaintiffs produced four types of documents in response to Government Request No. 16:

- Contractor production reports that "identify the schedule activity number, the work location and description, the employer, the number of employees onsite that day, the trade, and the total hours worked collectively," ECF No. 47 at 12;

- Health, safety, and environment reports that "were prepared daily" and show "the names of all employees onsite who attended the Tool Box Talks each day and their respective positions," *id.* at 12–13;

- Presence sheets that "identify the date, the names of all individuals onsite, the hours onsite, and a signature of the individual," *id.* at 13; and

- From the JV, "a spreadsheet that identified every local laborer hired, the date of hire, nationality and if the employee was a daily worker," *id.* at 14.

Plaintiffs argue those documents "adequately and sufficiently" respond to Government Request No. 16. *Id.* at 10.

The Government, however, believes those documents do not show the individualized details sought by Government Request No. 16 for each construction project, especially "given [P]laintiffs' practice of sharing personnel between the two projects." ECF No. 49 at 9. Nonetheless, the Government acknowledges the presence sheets "come the closest to the requested time working on the project." *Id.* But only Ergotem produced presence sheets, and the total number of its presence sheets "falls far short of even the number of project days accrued on each project." *Id.* Thus, the Government contends Plaintiffs "failed to show that they have satisfied their discovery obligations" in response to Government Request No. 16. *Id.* at 9–10.

To the extent Plaintiffs can locate any more documents that are responsive to Government Request No. 16, Plaintiffs must produce all documents relevant to the time spent on both construction projects in response to Government Request No. 16. Specifically, if the JV also kept presence sheets or if Ergotem did not produce all its presence sheets, Plaintiffs must produce any additional presence sheets.

To the extent Plaintiffs cannot locate any other responsive documents, they may have a difficult time proving their underlying contract claims for wrongful termination and excusable delay. *See* ECF No. 1 ¶¶ 105–28; Case No. 23-2169, ECF No. 1 ¶¶ 93–117. To prove their damages for those claims, they will need to prove the time they spent on each construction project. The Government contends that Plaintiffs' produced documents do not reflect their time spent on each construction project. ECF No. 49 at 9. At this stage of litigation, the court does not need to decide whether Plaintiffs can prove their damages. But the court will not permit Plaintiffs to rely on unproduced time-keeping records as this case proceeds.

### 4. Plaintiffs must produce documents from Plaintiffs' foreign counsel that are responsive to Government Request No. 17.

The Government next moves to compel Plaintiffs to produce additional documents responsive to Government Request No. 17, which seeks "[a]ll documents relating to each attempt by your or your subcontractors' or suppliers' personnel to enter Djibouti for the project." ECF No. 39-1 at Appx092, Appx101.

Plaintiffs believe their productions are adequate and sufficient because their project files "included documents related to personnel entering Djibouti," and they produced "approximately 78 documents that are communications with the Djiboutian government agencies." ECF No. 47 at 14. They also explain that "Plaintiffs retained local counsel in Djibouti . . . that engaged with local Djiboutian authorities concerning employment and immigration issues related to its personnel attempting to enter the country." *Id.* at 14–15.

The Government correctly replies that documents in Plaintiffs' "Djiboutian counsel's possession are still within [P]laintiffs' control." ECF No. 49 at 10. Rule 34 provides that requests for production of documents cover documents within "the responding party's possession, custody, or control." RCFC 34(a)(1). Documents held by Plaintiffs' Djiboutian counsel are within their control. Thus, to the extent Plaintiffs' Djiboutian counsel holds

documents that are responsive to Government Request No. 17, Plaintiffs must produce such documents, unless Plaintiffs raise another ground for objecting to the production of such documents.

> 5.     Plaintiffs' production in response to Government Request No. 19 was sufficient.

Finally, the Government moves to compel the production of additional documents responsive to Government Request No. 19, which seeks "[a]ll documents relating to [the JV's or Ergotem's] responses to NAVFAC's show cause letter dated [August 25, 2022, for the JV or August 26, 2022, for Ergotem]."  ECF No. 39-1 at Appx092, Appx101.

Plaintiffs assert they produced all responsive documents, "specifically including the Project Completion Plan, information from key subcontractors, certificates for subcontractors, technical data sheets for specific materials, and resumes for key personnel."  ECF No. 47 at 15. In its reply, the Government argues in tandem with Government Request No. 17 that Plaintiffs' failure to produce documents from their foreign counsel is a failure to meet their discovery obligations for Government Request No. 19.  ECF No. 49 at 10.  Not so.  Plaintiffs did not withhold documents requested by Government Request No. 19 on the grounds such documents were held by their foreign counsel.  Rather, they provided a list of the responsive documents that the JV produced for Government Request No. 19 and indicated Ergotem made a similar production.  ECF No. 47 at 15–16.  The Government did not argue those documents were insufficient or point to any documents that were missing.  Given Plaintiffs' efforts to identify the responsive produced documents and the failure of the Government to point out any deficiencies specifically pertinent to Government Request No. 19, there is no basis to order additional production.

## IV.    Motion for a Protective Order

The Government also moves for a protective order from Plaintiffs' second and third sets of discovery requests.  ECF No. 39.  Like the motion to compel, the court grants the Government some, but not all, of its requested relief in its motion for a protective order.

### A.    The timing of Plaintiffs' second and third sets of discovery requests does not prove they were sent in bad faith.

The Government contends the Plaintiffs' second and third sets of discovery requests were sent in bad faith, specifically because of their timing.  ECF No. 39 at 11.  Plaintiffs served their second set of discovery requests on January 31, 2025, in "the same e-mail message attaching [P]laintiffs' response" to a letter from the Government "pointing out [P]laintiffs' continuing discovery deficiencies."  *Id.*  Plaintiffs then served their third set of discovery requests on February 10, 2025, "after the parties met and conferred . . . regarding [P]laintiffs' continuing discovery deficiencies and the Government's proposed fraud counterclaims."  *Id.*  The Government argues these requests were served "so late during fact discovery," ECF No. 49 at 10, that their timing "suggest[s] that they were served as retaliations against the [G]overnment for legitimately pursuing discovery in this litigation including conferring in good faith," ECF No. 39 at 11.

Timing alone, however, does not establish bad faith. The court's rules require that the responding party have at least 30 days to respond to document requests and interrogatories (which the parties may shorten or lengthen by stipulation (if they communicate with each other)). RCFC 33(a)(b)(2), 34(b)(2)(A). At the time of Plaintiffs' second and third sets of document requests, fact discovery was set to close on March 17, 2025. ECF No. 21. By the court's calculus, Plaintiffs filed both discovery requests more than 30 days before the close of fact discovery. And the court cannot find that the timely filing of discovery requests even if late in discovery constitute bad faith.

While the court had encouraged the parties to begin discovery as soon as possible, ECF No. 21, neither party heeded the court's advice. On February 14, 2025, around the same time as Plaintiffs' second and third sets of discovery requests, the Government noticed depositions for the final days of the discovery period. *See* ECF No. 47 at 7. Thus, both parties conducted "late" discovery in the Government's view. The court does not conclude that Plaintiffs' second and third sets of discovery requests were sent in bad faith.

**B.    The Government must respond to some, but not all, of Plaintiffs' second and third sets of discovery requests.**

Just as the court did not order Plaintiffs to redo discovery, the court will not order the Government to respond to all of Plaintiffs' discovery requests. The court limits the scope of the Government's required responses to Plaintiffs' second set of requests for production of documents (referred to as "Plaintiffs Request No.")[8] and Plaintiffs' second and third sets of interrogatories (referred to as "JV Interrogatory No." and "Ergotem Interrogatory No.")[9] below.

1.    The Government's response to Plaintiffs Request No. 12 is sufficient.

Plaintiffs Request No. 12 sought a proposed change order log. ECF No. 39-1 at Appx020, Appx025. As the Government has stated, it has not located such a log "despite diligent efforts to locate such a log," although it has produced all change orders. ECF No. 39 at 16. That response is sufficient under this court's rules. *See* RCFC 26(g)(1) (explaining an attorney's signature certifies that discovery disclosures and responses followed "a reasonable inquiry" and reflect "the best of the person's knowledge, information, and belief"). The

---

[8] The JV and Ergotem sent separate requests for production of documents. ECF No. 39-1 at Appx017–Appx026. The parties do not distinguish between each Plaintiff's discovery requests, and Plaintiff's Request Nos. 12–19 are materially the same. *See* ECF No. 39 at 12, 14–17; ECF No. 39-1 at Appx020–21, Appx025–26; ECF No. 47 at 19–25. Accordingly, the court does not distinguish between the requests sent on behalf of the JV or Ergotem, and addresses them together.

[9] The JV and Ergotem sent separate interrogatories. ECF No. 39-1 at Appx027–32, Appx034–39, Appx049–54, Appx056–61. While Plaintiffs' interrogatories overlap, they do not follow the same numbering. Accordingly, the court identifies the corresponding Plaintiff and interrogatory number for each interrogatory.

Government need not state that a proposed order log does not exist as Plaintiffs argue. *See* ECF No. 47 at 26. The Government does not need to further respond to Plaintiffs Request No. 12.

        2.    <u>Plaintiffs may not seek discovery from the Government about the alleged Djiboutian government entrance ban, but they may seek discovery about the Navy's efforts to obtain visa waivers and facilitate Plaintiffs' workers' entry into Djibouti.</u>

Plaintiffs each sent seven discovery requests relating to the alleged Djiboutian "entrance ban" in 2022 and the Navy's efforts to assist their workers with entry into Djibouti and with visa waivers. As relevant to these discovery requests, Plaintiffs defined "Entrance Ban" to refer to "the entrance ban put into place by the Djiboutian government starting in early 2022 and continuing through at least January 6, 2023 that prohibited foreign (i.e., not Djiboutian citizen) workers from entering Djibouti." ECF No. 39-1 at Appx019, Appx024, Appx053, Appx059.

The Government generally objects to these requests because the alleged entrance ban "was a sovereign act by the Djiboutian government, not the United States." ECF No. 39 at 15. Further, the timing of the entrance ban—in 2022—falls "too late to excuse Ergotem's inability to meet the fuel storage project's contract completion date of September 10, 2021," and the alleged entrance ban only affected the medical/dental facility project because of the JV's personnel choices; therefore, Plaintiffs cannot prove "the alleged Djibouti entry issues or any other alleged causes resulted in any delay to the respective project's critical path 'without the fault or negligence of the Contractor.'" *Id.* (quoting FAR 52.249-10(b)). Plaintiffs respond that the Government's objections are premature legal conclusions about their claims. ECF No. 47 at 24. They contend the Government was aware of the entrance ban, and their additional discovery requests clarify that they seek documents from the Government about the entrance ban. *Id.* at 23.

        *a)*    *Entrance Ban Requests*

Turning to the specific requests, Plaintiffs Request Nos. 13–14 seek Government documents discussing the alleged Djiboutian entrance ban and efforts to assist foreign workers entering Djibouti, and Ergotem Interrogatory No. 20 and JV Interrogatory No. 23 asks the Government to identify any contract at Camp Lemonnier where a contractor notified the Government of issues relating to the entrance ban. ECF No. 39-1 at Appx020, Appx025, Appx054, Appx060–61. The Government argues these requests are "cumulative to at least [P]laintiffs' respective RFP No. 6 that sought information addressing the alleged Djibouti entry issues." ECF No. 39 at 14. Plaintiffs explain the Government's production in response to their previous discovery request included none of the Government's own documents, but only documents originally from Plaintiffs. ECF No. 47 at 23. At the hearing, Plaintiffs mentioned that documents produced in discovery indicate the Government told Plaintiffs they were working on the entrance ban issue. ECF No. 56 at 51; *see also* ECF No. 47 at 23 (discussing deposition testimony about Djiboutian entry issues).

Because Plaintiffs' previous efforts to seek discovery about the entrance ban were fruitless, compelling the Government to conduct a further inquiry into such documents is likely to unduly burden the Government. Accordingly, for good cause shown, the court protects the

Government from Plaintiffs Request Nos. 13–14, Ergotem Interrogatory No. 20, or JV Interrogatory No. 23.

> *b)    Visa Waiver Requests*

The Government also objects to Plaintiffs' requests relating to visa waiver efforts. Plaintiffs Request Nos. 15–16 seek Government documents discussing visa waivers, both internally and with the Djiboutian government.  ECF No. 39-1 at Appx020, Appx025.  Ergotem Interrogatory Nos. 21–22 and JV Interrogatory Nos. 24–25 ask the Government to identify any visa waivers issued to contractors "after January 1, 2022," and any issues affecting the ability to issue visa waivers.  ECF No. 39-1 at Appx054, Appx060–61.  The Government claims these requests are irrelevant and disproportionate to the needs of the case because the Navy's efforts to obtain the "issuance of visa waivers . . . would have been ineffective in the face of the Djiboutian government's 'Entrance Ban.'"  ECF No. 39 at 14–15.  Plaintiffs represented at the hearing that at least one of their contracts imposes a duty on the Government to facilitate their workers' travel into Djibouti, so the Navy's efforts to help their workers obtain visa waivers would be relevant. ECF No. 56 at 69.

At this stage in the litigation, none of the parties has presented the disputed contracts to the court.  Based on Plaintiffs' counsel's representation that at least one of the contracts imposes a duty on the Navy to facilitate entry into Djibouti for Plaintiffs' workers and the broad scope of discovery, RCFC 26(b)(1), information and documents about the Navy's efforts, if any, to facilitate Plaintiffs' workers' entry into Djibouti are discoverable.  The Government's legal conclusions that any entry efforts will not affect the outcome of this case do not suffice as good cause to protect it from these timely-served discovery requests.  Thus, the Government must respond to Plaintiffs Request Nos. 15–16, Ergotem Interrogatory Nos. 21–22, and JV Interrogatory Nos. 24–25.

> 3.    <u>The Government's response to Plaintiffs Request No. 17 is sufficient.</u>

Plaintiffs Request No. 17 sought a recording of a "video meeting with Captain Carey as referenced in the 'Request to Terminate for Default.'"  ECF No. 39-1 at Appx021, Appx025. The Government explains that it produced all documents with the "Government's account of that video meeting," and no documents suggest the meeting was recorded.  ECF No. 39 at 16–17; ECF No. 39-1 at Appx077, Appx082; ECF No. 49 at 14–15.  As the Government has stated, it did not locate a recording in "a preliminary search," so "such a recording either does not exist or would require substantial efforts to locate."  ECF No. 39 at 16–17.  Like Plaintiffs Request No. 12, the Government only needed to conduct a reasonable inquiry for the recording sought by Plaintiffs Request No. 17, which it did.  Thus, the Government's response that it located no recording of the meeting is a sufficient response to this discovery request.  While Plaintiffs argue otherwise, ECF No. 47 at 26, the Government does not have to state that it did not record the meeting.  Because a recording of the meeting either does not exist or would take substantial efforts to locate, the Government proffered good cause to protect it from Plaintiffs Request No. 17.  The Government does not need to further respond to Plaintiffs Request No. 17.

14

4.    Plaintiffs may seek discovery about the support for the Government's statements about reprocurement in the terminations for default, but they may not seek discovery about any reprocurement efforts since their contract terminations.

Plaintiffs each sent seven discovery requests relating to reprocurement of their terminated contracts.  The Government argues discovery related to reprocurement is irrelevant and disproportionate to the needs of the case because "the Government has not asserted any Contract Dispute Act claims for reprocurement costs, and accordingly, has not sought to introduce a counterclaim for said costs in this litigation."  ECF No. 39 at 12.  Plaintiffs argue their reprocurement discovery requests are "relevant to the underlying basis of the termination decision and the question of whether the termination is supported by an alleged urgent need on the part of the Government."  ECF No. 47 at 20.  Plaintiffs' seven reprocurement discovery requests can be split into two groups: requests regarding information generated before the terminations for default and information that may, or may not, have been generated since the terminations.

In the first group, Ergotem Interrogatory Nos. 14–16 and JV Interrogatory Nos. 17–19 seek information about the support for statements in the terminations for default about reprocurement of the contracts.  ECF No. 39-1 at Appx031–32, Appx038–39.  Plaintiffs Request No. 18 seeks all documents supporting the answers to those interrogatories.  *Id.* at Appx021, Appx026.

Information responsive to these four discovery requests is relevant to the present actions.  As the parties acknowledge, the Federal Acquisition Regulation ("FAR") "requires agencies to consider reprocurement before default terminations."  ECF No. 39 at 12 (citing FAR 49.402-6); ECF No. 47 at 20 (citing FAR 49.402-3(f)).  And the terminations for default of Plaintiffs' contracts indicate the Navy did consider reprocurement before termination.  The terminations for default of Plaintiffs' contracts state "Re-procurement is recommended."  ECF No. 39-1 at Appx078, Appx083.  They further detail that reprocurement "will need to take place immediately upon determination of Termination," and it "will take between 12 and 18 months to re-award if funds are available" with the total "time is identified to be 21 months."  *Id.* at Appx078–79, Appx083–84.  The terminations for default also recommend "a standalone re-procurement with a United States Contractor that has" either medical/dental facility construction experience or fuel storage facility experience.  *Id.* at Appx079, Appx084.

Thus, the terminations for default indicate the Navy considered the effort needed for reprocurement of Plaintiffs' contracts before their terminations.  Such consideration likely relied on some information responsive to Plaintiffs' interrogatories and documents responsive to Plaintiffs' Request No. 18.  The Government has not provided sufficient good cause to protect it from responding to these timely-served discovery requests.  Accordingly, to the extent such information and documents exist, the Government must respond to Ergotem Interrogatory Nos. 14–16, JV Interrogatory Nos. 17–19, and Plaintiffs Request No. 18 with documents related to the responses to Ergotem Interrogatory Nos. 14–16 and JV Interrogatory Nos. 17–19.  If it does not locate any responsive information or documents, the Government may so state.  The court notes that if no such responsive information or documents exist, that absence may indicate the Government's statements in the terminations for default are unsupported and thereby help Plaintiffs' case.

In the second group, Ergotem Interrogatory Nos. 13 and 17 and JV Interrogatory Nos. 16 and 20 seek information about actual reprocurement efforts. ECF No. 39-1 at Appx031–32, Appx038–39. Relatedly, Plaintiffs Request No. 19 seeks "all Documents and Communications that reference or relate to the current Government estimate for the time and cost to reprocure the Contract work." *Id.* at Appx021, Appx026. Plaintiffs Request No. 18, mentioned above, also seeks all documents that support the answers to Ergotem Interrogatory No. 13 and JV Interrogatory No. 16. *Id.* at Appx021, Appx026.

These requests exceed the scope of discovery and are disproportionate to the needs of these actions. The Government contends its actual reprocurement efforts are relevant when it asserts a counterclaim for reprocurement costs. ECF No. 39 at 12. It further notes that no such reprocurement has taken place. ECF No. 49 at 11–12. While Plaintiffs are correct that reprocurement must be considered before termination, ECF No. 47 at 20, whether reprocurement occurs after termination and its actual cost does not bear on whether the Navy acted appropriately at the time of termination. The Navy's actual reprocurement efforts for these contracts, if any, thus exceed the scope of discovery in this case. Further, the lack of an actual reprocurement indicates the Government likely has no information responsive to these discovery requests. As a result, for good cause shown, the Government does not need to respond to Ergotem Interrogatory Nos. 13 and 17, JV Interrogatory Nos. 16 and 20, Plaintiffs Request No. 19, or Plaintiffs Request No. 18 to the extent it seeks documents relating to Ergotem Interrogatory No. 13 and JV Interrogatory No. 16.

5.    The Government must respond to Plaintiffs' interrogatories about other Camp Lemonnier contractors' delays with information regarding any contract delays related to COVID.

Finally, two of Plaintiffs' interrogatories— Ergotem Interrogatory Nos. 18–19 and JV Interrogatory Nos. 21–22—seek information about other contractors' delays and whether the Government allowed them to continue performance.[10] ECF No. 39-1 at Appx053, Appx060. The Government argues these interrogatories "are disproportionate to the needs of the case [and] exceed the scope for discovery." ECF No. 39 at 13. It characterizes these interrogatories as a "fishing expedition against the Government" that seeks "information irrelevant to any party's claim or defense." *Id.* Given the broad scope of these interrogatories, the Government would need to "reopen its interviews of potentially knowledgeable witnesses of unknown number who may have taken up new positions at Navy locations around the world" to respond to them. *Id.* at 13–14.

Plaintiffs argue these interrogatories are relevant because the Navy repeatedly justified its denial of time extensions based on comparing Plaintiffs' performance to the performance of other contractors at Camp Lemonnier. ECF No. 47 at 21. They point to the Navy's statements that it "is not providing blanket contract extensions for all perceived delays that can be

_____

[10] Three other interrogatories, Ergotem Interrogatory Nos. 20–22 and JV Interrogatory Nos. 23–25, also seek information relating to other contractors. ECF No. 39-1 at Appx054, Appx060–61. The court addresses these interrogatories in tandem with Plaintiffs' other discovery requests about the alleged Djiboutian entrance ban and vias waivers, *see supra* Section IV.B.2, so it does not further address them here.

inaccurately 'justified' by COVID." *Id.* (quoting ECF No. 47-10 at 2); *see also* ECF No. 47-11 at 5. Thus, they seek information about other Camp Lemonnier contractors to determine whether the Navy did "grant[] time to other contractors" such that its "decision to terminate" each of Plaintiffs' contracts "was arbitrary and capricious." ECF No. 47 at 21. The Government replies that the Navy's statements about other contractors reflect that the Navy sought individualized justifications for "each extension request," so the Navy's "administration of other contracts at [Camp Lemonnier] is not relevant to whether [P]laintiffs sufficiently met the requirements under FAR 52.249-10 in seeking time extensions." ECF No. 49 at 12.

These interrogatories have the potential to be disproportionate to the needs of this case and are burdensome because they seek information about all other contractors at Camp Lemonnier during the relevant time. But Plaintiffs identified a specific justification for these interrogatories—they seek to verify the Navy's statements in time impact analysis documents that it did not grant blanket extensions based on COVID. *See* ECF No. 47 at 21; ECF No. 47-10 at 2; ECF No. 47-11 at 5. If the Navy granted any such extensions contrary to these statements, Plaintiffs argue such extensions would be relevant to their cases. The court agrees and notes that Plaintiffs have not justified an inquiry into all possible contractor delays and extensions, just those based on COVID. Accordingly, the court narrows the scope of these interrogatories and orders the Government to search for any contract extensions requested due to COVID, and if it discovers any such extensions, it shall respond to Ergotem Interrogatory Nos. 18–19 and JV Interrogatory Nos. 21–22 accordingly. If it does not discover any such extensions, it may so state in its response to these interrogatories. For the avoidance of doubt, the Government does not need to respond to these interrogatories about contractor extensions unrelated to COVID.

## V.    Motion for Relief Under the Protective Order

Plaintiffs also filed a discovery motion in which they move for relief under the protective order to (1) grant Mr. Hadjidimoulas access to protected information, and (2) require the Government to stop overmarking documents as protected. ECF No. 46.

### A.    The parties shall jointly move to give Mr. Hadjidimoulas access under the protective order.

As relevant to Plaintiffs' motion, the Government raised concerns, beginning in February 2025, about Mr. Hadjidimoulas accessing protected information. *See* ECF No. 46 at 4–6; ECF No. 46-2 at 6–7. The Government requested that Mr. Hadjidimoulas complete an application for access under the protective order. ECF No. 46 at 5–6; ECF No. 46-2 at 1, 3–4; ECF No. 46-3 at 3–4. Plaintiffs proposed an amended protective order and amended application for access to accommodate the Government's request. ECF No. 46 at 7; ECF No. 46-4. The Government did not agree to the proposed amended documents, but it "offered an accommodation to allow Mr. Hadjidimoulas to attend any remaining depositions so long as the exhibits used during depositions did not include competition sensitive information." ECF No. 46 at 7; ECF No. 46-5. Plaintiffs contend such an accommodation "does not allow Mr. Hadjidimoulas to review Protected Information not used during depositions and unfairly prejudices the Plaintiffs." ECF No. 46 at 7.

Plaintiffs argue the protective order already grants Mr. Hadjidimoulas access to protected information as a representative of Plaintiffs. *Id.* at 9; ECF No. 52 at 2. They alternatively argue for an amendment to the protective order to allow him access. ECF No. 46 at 9–10; ECF No. 52 at 3. At the hearing, the Government quoted from page 10 of Mr. Hadjidimoulas's deposition transcript where he explained that he is an independent contractor for the JV and Ergotem and is not an employee of either. ECF No. 56 at 14–16, 18. So even if Plaintiffs' representatives (as parties to the case) are bound by the protective order, *see* ECF No. 23, Mr. Hadjidimoulas as an independent contractor would not be, ECF No. 56 at 18.

In any event, the Government does not seek to prevent Mr. Hadjidimoulas from accessing protected information. ECF No. 51 at 3. It just asks that Mr. Hadjidimoulas complete an application for access as a procedural safeguard to ensure he properly protects such information. *Id.* at 2–3. At the hearing, Plaintiffs agreed that Mr. Hadjidimoulas, as an independent contractor, should fill out an application for access under the protective order. ECF No. 56 at 18. Thus, the parties have some common ground: Mr. Hadjidimoulas may access protected information, but the existing protective order does not allow him to do so.

At the hearing, the court explained the parties should grant Mr. Hadjidimoulas, and other independent contractors or non-party employees of Plaintiffs, a route to access to protected information by amending the protective order, tailoring an application for access to apply to such contractors or non-party employees, and possibly adding an attorneys'-eyes-only provision to the protective order. ECF No. 56 at 23. The court then told the parties that it would prefer for them to resolve this issue themselves in a joint motion that incorporates those changes. *Id.* at 24. As of this order, the parties have not filed such a motion.

Accordingly, the court orders the parties to meet and confer on a joint motion to enable Mr. Hadjidimoulas to access protected information. The parties should use the court's suggestions from the hearing to guide their discussion. Following their meet-and-confer, the parties are directed to jointly move to amend the protective order and the application for access under the protective order to enable individuals such as Mr. Hadjidimoulas to access protected information. The parties should also consider whether to include an attorneys'-eyes-only provision in their proposed amended protective order.

### B.    The court denies without prejudice Plaintiffs' motion insofar as it asks the court to order the Government to remove protected information designations.

Plaintiffs also complain about the Government's alleged overmarking of documents as protected. ECF No. 46 at 3–4, 10. The Government responds that it has granted Plaintiffs access to all the documents that Plaintiffs identified in their motion as improperly marked, and it has unmarked documents when applicable. ECF No. 51 at 7–8. The Government also notes it marked documents as protected based on Plaintiffs' own practice of marking many documents as confidential. *Id.*

At this time, Plaintiffs have not identified any specific documents that they cannot access due to the Government's alleged overmarking of documents. Thus, the court denies without prejudice Plaintiffs' motion for relief under the protective order pertaining to the Government's alleged overmarking of documents.

## VI.    Conclusion

For these reasons, the court **GRANTS-IN-PART** and **DENIES-IN-PART** without prejudice the Government's motion, ECF No. 39, and **DENIES** without prejudice Plaintiffs' motion, ECF No. 46.

Plaintiffs shall produce the following additional responsive documents:

- Government Request Nos. 2–3, 7, and 14–15 – Any responsive documents from the business email addresses of Mr. Christodoulos Hadjidimoulas, Mr. Christos Panayiotopoulos, Ms. Margarita Toumasi, and Mr. Dimitrios Sakellios.

- Government Request No. 16 – Any responsive documents, particularly any presence sheets, not previously produced.

- Government Request No. 17 – Any responsive documents from Plaintiffs' foreign counsel.

The Government shall respond to the following discovery requests:

- Ergotem Interrogatory Nos. 14–16 and 21–22, JV Interrogatory Nos. 17–19 and 24–25, and Plaintiffs Request Nos. 15–16, in full;

- Ergotem Interrogatory Nos. 18–19 (in part) and JV Interrogatory Nos. 21–22 (in part) to the extent the Government discovers any COVID-related time extensions for other Navy contractors at Camp Lemonnier during the relevant time period; and

- Plaintiffs Request No. 18 with any documents that support the Government's response to Ergotem Interrogatory Nos. 14–16 and JV Interrogatory Nos. 17–19.

The court grants the Government's motion insofar as it seeks to avoid responding to Ergotem Interrogatory Nos. 13, 17, 20; JV Interrogatory Nos. 16, 20, 23; and Plaintiffs Request Nos. 12–14, 17, 19.

To accommodate this additional discovery, the court **ORDERS** that fact discovery will close on December 8, 2025.

Finally, as outlined above and during the hearing on this matter, the court **DIRECTS** the parties to meet and confer and then to jointly move to amend the protective order, ECF No. 23, and the application for access to protected material.  They shall file this motion on or before August 25, 2025.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge