# In the United States Court of Federal Claims

Nos. 23-2168 & 23-2169
Filed: June 30, 2026
Reissued: July 22, 2026[1]

| | |
|---|---|
| JVP & C. DEVELOPMENT S.A., – ERGOTEM S.A. and ERGOTEM S.A., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| *Defendant*, | ) |
| | ) |

## OPINION AND ORDER

Discovery in this case has not gone smoothly. The court barely got its last discovery order out the door when two more discovery motions came in. In the first of these two motions, the Government seeks an adverse inference due to Plaintiffs' spoliation of documents. This adverse inference would all but dispose of these cases. While it appears that Plaintiffs have acted with the intent to deprive the Government the use of certain records, it is not clear at this early stage which of the lost documents cannot be replaced through other discovery. In other words, the Government's motion is premature because it has not shown that the Plaintiffs' spoliation was successful. And the Government has not provided sufficient indicia that the documents Plaintiffs lost contained the information that the Government speculates was in them. In the second motion, the Government seeks to compel Plaintiffs to produce documents that they are withholding as privileged. Here, the Government has not met its burden to invade the privileges asserted by the Plaintiffs. For the reasons explained below, the Government's motion for an adverse inference, ECF No. 65, and motion to compel, ECF No. 71, are denied without prejudice to refiling at the completion of discovery.[2]

---

[1] Because the court did not receive any proposed redactions, the court reissues this decision publicly.

[2] Although the fact discovery was set to close in December 2025, *see* ECF No. 57, due to ongoing discovery issues the Parties were working to arrange depositions of Plaintiffs' employees in Greece and other countries. The court understands that discovery is ongoing and nothing in the prior scheduling order was meant to prevent that discovery.

## I.    Background

The United States Navy Facilities Engineering and Systems Command (the "Navy") contracted with Plaintiff JVP & C. Development – Ergotem S.A. (the "JV") for the construction of a "Medical/Dental facility" in Camp Lemmonier, Djibouti.  ECF No. 1 ¶ 1.  The Navy also contracted with Plaintiff Ergotem S.A. ("Ergotem") for the construction of a "Fuel Storage Facility" at the same location.  Case No. 23-2168, ECF No. 1 ¶ 1.  The Navy terminated both contracts for default on January 6, 2023.  *Id.*; Case No. 21-2169, ECF No. 1 ¶ 1.  On December 22, 2023, the Plaintiffs filed separate complaints challenging the terminations for default and seeking extensions for performance.  Case No. 23-2168, ECF No. 1; Case No. 23-2169, ECF No. 1.  The court consolidated the cases on April 12, 2024.  ECF No. 16.

On February 6, 2025, the Government moved to amend its answer to Ergotem's complaint to add a fraud counterclaim based on information learned in discovery.  ECF No. 35.  The court granted the motion.  ECF No. 44.  On February 21, 2025, the Government filed a motion to compel production and for a Protective Order, ECF No. 39, while the Plaintiffs cross-moved for relief under the Protective Order, ECF No. 46.  The court granted-in-part and denied-in-part the Government's motion and denied the Plaintiffs' motion.  ECF No. 57.  As the court explained then, "[s]imple discussions would have gone a long way" toward resolving all the Parties' then-present disputes.  *Id.* at 1.

But the Parties' discovery disputes did not end there.  On October 21, 2025, the Government moved for sanctions upon learning that Plaintiffs' Djiboutian counsel, Ms. Guerinot, lost all her emails due to a "server malfunction."  ECF No. 65.  One month later, the Government filed a second motion to compel production; this time, for documents withheld as purportedly privileged.  ECF No. 71.  The court held arguments for both motions on January 13, 2026.  The motions are now ripe for resolution.

## II.    Discussion

### A.    Motion for Adverse Inference

The Government's motion for sanctions, ECF No. 67, seeks an adverse inference under two distinct prongs of Rule of the Court of Federal Claims ("RCFC") 37.[3]  Under RCFC 37(e), the Government seeks an adverse inference due to Plaintiff's spoliation of evidence (i.e., failure to preserve Ms. Guerinot's email inbox).  Under RCFC 37(b)(2)(A), the Government requests an adverse inference due to Plaintiffs' failure to comply with the court's order compelling production of (1) Ms. Guerinot's emails, and (2) individualized timekeeping records.  The court addresses each in turn.

---

[3] Because RCFC 37 is materially the same as Fed. R. Civ. P. 37, the court considers interpretations of that rule when interpreting RCFC 37.  *E.g.*, *Big Easy Studios, LLC v. United States*, 147 Fed. Cl. 539, 543-44 (2020).  According to the court's 2002 Rules Committee Note, "interpretation of the court's rules will be guided by case law and the Advisory Committee Notes that accompany the Federal Rules of Civil Procedure."

1.     The Government's motion for an adverse inference under RCFC 37(e) is premature as it is not yet clear "what cannot be replaced or restored through additional discovery."

The Government moves for an adverse inference under RCFC 37(e) for Plaintiffs' spoliation of evidence. "Spoliation occurs when a party destroys or materially alters relevant evidence that it had a duty to preserve." *4DD Holdings, LLC v. United States*, 143 Fed. Cl. 118, 130 (2019) (citing *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 268 (2007)). Parties have a duty to preserve evidence when litigation is "pending or reasonably foreseeable." *Id.* (quoting *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)) (cleaned up).

The court's authority to impose sanctions for spoliation stems from both its inherent authority to govern the judicial process and RCFC 37. *Id.* (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991)). The Government's motion invokes RCFC 37(e), which provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>> (A) presume that the lost information was unfavorable to the party;
>>
>> (B) [not used]; or
>>
>> (C) dismiss the action or enter a default judgment.

Thus, the court's authority to enter sanctions under RCFC 37(e) is triggered when (1) electronically stored information ("ESI") is lost while a party had a duty to preserve it, (2) the loss occurred because the party failed to take reasonable steps to preserve the ESI, and (3) the lost information "cannot be restored or replaced through additional discovery." Then, assuming a party establishes prejudice from spoliation, the court may "order measures no greater than necessary to cure the prejudice." *Id.* The court may only enter an adverse inference—i.e., "presume that the lost information was unfavorable to the party"— if the movant establishes that the spoliator "acted with the intent to deprive" the other party of the ability to use the information in litigation. *Id.*

The Government seeks an adverse inference due to the loss of an email inbox belonging to Ms. Guerinot. ECF No. 65 at 6–7. Ms. Guerinot served as Plaintiffs' Djiboutian counsel in connection with the construction projects at Camp Lemonnier. ECF No. 67-2 at ¶ 2 (Guerinot

3

Affidavit).  Her tasks included "advising on local labor and employment matters, communications with local labor unions, and liaison efforts with Djiboutian authorities regarding entry and immigration issues affecting Clients' personnel." *Id.*  Two months after this court's August 2025 order compelling production of documents from Ms. Guerinot responsive to the Government's Request No. 17 (seeking "[a]ll documents relating to each attempt by your or your subcontractors' or suppliers' personnel to enter Djibouti for the project."), Plaintiffs informed the Government that Ms. Guerinot "lost all of her previous emails" in April 2024.  ECF No. 65 at 6.  Plaintiffs contend that the loss was due to a "server malfunction during the change of host providers."  ECF No. 67 at 15.  The Government argues that this was an intentional act by the Plaintiffs to deprive the Government's use of material information.  ECF No. 65 at 7–14.  In the Government's view, Plaintiffs' conduct warrants an inference that the lost information was unfavorable to the Plaintiffs.  *Id.* at 2

Pursuant to RCFC 37(e), the court starts by addressing whether Plaintiffs had a duty to preserve the lost documents in the first place.  They did.  "The duty to preserve evidence begins when litigation is 'pending or reasonably foreseeable.'"  *Micron Tech.*, 645 F.3d at 1320 (quoting *Silvestri v. General Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)).  The latest possible date by which Plaintiffs had a duty to preserve evidence was December 22, 2023, the date on which they filed their complaints.  The loss of Ms. Guerinot's emails in April 2024 thus occurred well after the duty to preserve was triggered.  And given that immigration issues are central to this case, the duty to preserve attached to these records.  This much is not in dispute.

Next under RCFC 37(e) is whether Plaintiffs took reasonable steps to preserve the evidence.  They did not.  As the Government repeatedly points out, and as Plaintiffs do not dispute, Plaintiffs did not issue a written litigation hold to Ms. Guerinot nor to any other custodians.  *See* ECF No. 69 at 4.  For that matter, it does not appear that the Plaintiffs or Ms. Guerinot took *any* steps to preserve her emails before they were deleted.  Plaintiffs' response brief claims—without support—that Ms. Guerinot's emails were "properly preserved," frames the loss as a "byproduct of an inadvertent technical failure," and details Plaintiffs' "prompt[]" mitigation efforts.  ECF No. 67 at 16–19.  Glaringly absent from this discussion are any actions that Plaintiffs took to prevent the loss in the first place.  There were no efforts to collect or back up any of these documents, even though they were being moved from one provider to another.  Because Plaintiffs cannot point to any preservation measures that they undertook, they have fallen woefully short of satisfying their duty to preserve these documents.

Finally, the court considers whether the lost information can be "restored or replaced through additional discovery efforts" in accordance with RCFC 37(e).  This remains unclear.  The Government argues that without Ms. Guerinot's emails "[it] cannot prove [its] theory that entry issues to Djibouti experienced by plaintiffs' personnel was related to their dispute with local laborers and the Djiboutian Government."  ECF No. 65 at 2.  Notably, however, the Government offers no other evidence to support this theory; it simply assumes that proof of *its* theory must have been contained within Ms. Guerinot's inbox.  Specifically, the Government asserts that "'[t]here is nothing in this case' to support our theory because plaintiffs spoliated evidence."  *Id.* at 14.  This may be true, but the Government's speculation does not suffice to establish that lost records support its claims.  And without any other evidentiary support, the Government essentially asks the court to allow it to prove its case by adverse inference.  The court is not inclined to do so, especially with discovery ongoing.  *See, e.g.*, *Advanced Powder*

4

*Sols., Inc. v. United States*, 160 Fed. Cl. 575, 582 (2022) ("[Plaintiff's] conclusory assertion about the putative import of the missing documents is insufficient to justify an adverse inference sanction."). Perhaps further discovery will show that Ms. Guerinot's lost records likely contained information supporting the Government's theory. If so, the court will revisit the issue at that time. At this stage, however, it remains unclear what can or cannot be restored or replaced through discovery.

To be clear, the Government has other sources of information at its disposal. According to Ms. Guerinot, she primarily communicated with Djiboutian authorities through in-person meetings or phone calls and, when such meetings occurred, she "reported material developments" directly to the clients. Guerinot Affidavit at ¶ 8. Given that Plaintiffs waived privilege over their communications with Ms. Guerinot and produced all such documents to the Government, the Government has access to those reports and other communications reflecting the substance of her interactions with the Djiboutian officials. As a result, the Government may already possess all relevant documents that Ms. Guerinot had because Plaintiffs produced everything that they received from her. Thus, the court cannot determine whether any relevant information has been irretrievably lost, much less fashion an appropriate adverse inference.[4] As the advisory committee's note to Federal Rule of Civil Procedure 37(e)'s 2015 amendment explains, "[b]ecause electronically stored information often exists in multiple locations, loss from one source may often be harmless when substitute information can be found elsewhere."

That said, the court notes the record contains substantial evidence to support a finding that Plaintiffs acted with an intent to deprive the Government's use of Ms. Guerinot's emails. The sequence of events is probative:

- While they were developing Plaintiffs' challenge to the default terminations, Plaintiffs' prior counsel advised that they would send out a "detailed 'litigation hold' letter, which outlines the documentation [Plaintiffs] have a duty to preserve as a result of the forthcoming litigation." ECF No. 69-10, Exh. J., at 1.[5]

- Three days after the mention of a litigation hold, Plaintiffs terminated their counsel and replaced them with Fox Rothschild. ECF No. 69-9, Exh. I, at 1.

- Plaintiffs' counsel at Fox Rothschild did not send any litigation hold letter and permitted custodians to self-collect documents. ECF No. 67 at 17, n. 8; ECF No. 39 at 8–11. Fox Rothschild preferred to "conduct some discovery" and "pressure

---

[4] To be clear, the Government has identified at least one information gap stemming from the loss of Ms. Guerinot's emails. Mr. Sakellios asked Ms. Guerinot to "learn the reason of the rejection" of his visa application by the Djiboutian police, but Ms. Guerinot's response was not included in any productions. ECF No. 69 at 12. Nonetheless, because the scope of the lost information remains unclear, the motion is premature. The court will consider this email chain and similar evidence if the Government renews its RCFC 37(e) motion at the close of discovery.

[5] The court does not resolve whether Plaintiffs' obligation to preserve documents arose prior to their former counsel's drafting the litigation hold notice. This is because the loss of Ms. Guerinot's documents took place after the Plaintiffs filed these actions.

NAVFAC to convert the two terminations into . . . T4Cs." ECF No. 69-9, Exh. I, at 1.

- One custodian, Mr. Hadjidimoulas, who collected documents from Plaintiffs,[6] testified to receiving a verbal instruction to "not destroy documents" during a meeting. ECF No. 67 at 17, n. 8. But, as the Government points out, there is nothing in the notes of the meeting this instruction was supposedly given to corroborate any discussions regarding Plaintiffs' obligation to preserve documents. ECF No. 65 at 8. In any event, "the failure to issue a *written* litigation hold constitutes gross negligence because that failure is likely to result in the destruction of relevant information." *Passlogix, Inc. v. 2FA Tech., LLC*, 708 F. Supp. 2d 378, 410 (S.D.N.Y. 2010) (citation omitted) (collecting cases).

- Plaintiffs never sent Ms. Guerinot a litigation hold of any kind. She did nothing to preserve her ESI, even though she was moving it from one service provider to another. ECF No. 67 at 16–19.

- After sending a subpoena to Plaintiffs' scheduling consultant, the Government learned that Mr. Hadjidimoulas failed to produce several responsive and material documents. ECF No. 65 at 11. He was apparently collecting limited documents from each custodian rather than gathering all responsive documents from the custodians. Had counsel been involved, they could easily have corrected this erroneous collection practice in real time.

- A second custodian, Mr. Panagiotopoulos, admitted to deleting emails from his inbox before Plaintiffs' counsel could collect them. ECF No. 69-1, Exh. A, at 1.

- A third custodian, Mr. Sakelliois, failed to produce an email chain discussing the Djiboutian police's rejection of his visa application. ECF No. 69-14, Exh. N.

Considering this history, Ms. Guerinot's email loss does not appear to be as coincidental as Plaintiffs paint it to be. Plaintiffs' pattern of conduct suggests that they did not take any steps to preserve Ms. Guerinot's emails because they did not want the Government to see them. The court is also concerned with the timing of Plaintiffs' disclosure of the email loss to the Government. Recall that the Government moved to compel the production of these documents in 2025. *JVP & C. Dev. S.A. - Ergotem S.A. v. United States*, No. 23-2168, 2025 WL 2427565, at *9 (Fed. Cl. Aug. 8, 2025); ECF No. 57 at 10–11. Plaintiffs, however, did not disclose at that time that these documents were lost in 2024; they responded that their productions sufficiently covered the entry issues and that most communications were handled by their Djiboutian counsel (Ms. Guerinot). *See id.*. As explained in this court's August 2025 order, documents in Ms. Guerinot's possession were within Plaintiffs' "possession, custody, or control," and thus should have been produced. *Id.*; RCFC 34(a)(1). The fact that Plaintiffs' counsel were wholly

---

[6] Plaintiffs did not undertake a comprehensive document collection—i.e. one conducted by attorneys rather than a single custodian (who happens to be the heart of the Government's fraud counterclaim)—until the court ordered it in 2025.

unaware of the loss of Ms. Guerinot's records highlights Plaintiffs' abject failure in performing their basic discovery obligations.

In sum, Plaintiffs had a duty to preserve Ms. Guerinot's email inbox but failed to take any steps to do so. The record also contains substantial evidence suggesting the loss was not accidental. Nevertheless, RCFC 37(e) authorizes sanctions only where lost information "cannot be restored or replaced through additional discovery." Unless and until the Government can identify irretrievably lost information, an adverse inference that the lost documents support its theory that labor disputes caused the visa denials, which would largely end the case, is premature. Accordingly, the Government's motion for an adverse inference under RCFC 37(e) is denied without prejudice to renewing it following the completion of discovery.

> 2.    The Government's motion for sanctions under RCFC 37(b)(2)(A) fails because it has not shown that its desired timekeeping records exist.

The Government next moves for an adverse inference under RCFC 37(b)(2)(A) for Plaintiffs' failure to comply with this court's order compelling production of (1) Ms. Guerinot's emails, and (2) timekeeping recordsECF No. 71 at 4. RCFC 37(b)(2)(A) provides that, if a party "fails to obey an order to provide or permit discovery[,]. . . the court may issue further just orders." RCFC 37(b)(2)(A). Such orders may include directing that certain facts be taken as established "as the prevailing party claims," prohibiting the disobedient party from making certain arguments, or introducing certain evidence, striking pleadings, and more. *Id.*

At the outset, the court declines the Government's invitation to separately analyze the loss of Ms. Guerinot's emails under RCFC 37(b)(2)(A). The Government's argues that Plaintiffs have violated the court's prior discovery order by failing to produce responsive documents once held by Ms. Guerinot. ECF No. 69 at 13. But that contention is, at its foundation, the same as the spoliation argument. The Government's theory is not that Plaintiffs failed to produce existing documents in violation of the court's order, it is that Plaintiffs lost responsive documents before producing them. But that is the basis of the Government's RCFC 37(e) motion, which the court addresses above. The court therefore declines to consider the same spoliation theory as a violation of RCFC 37(b)(2)(A).

As to the timekeeping records, the Government argues that Plaintiffs have violated the court's order to "produce all documents relevant to the time spent on both construction products in response to the Government's Request No. 16." ECF No. 65 at 15 (citing ECF No. 59 at 10). The Government thus seeks an adverse inference regarding the time worked by the "management teams for each project (consisting of the project manager, superintendent, quality and safety managers)." ECF No. 69 at 14. The Government's grievance appears to be that the "Contractor Daily Reports" produced by Plaintiffs in response to its Request No. 16 do not identify individual worker names, thus hindering its ability to confirm whether Plaintiffs' non-Djiboutian personnel worked on-site on any given day. ECF No. 65 at 15–17. Plaintiffs, on the other hand, have maintained since this court's August 2025 order that they "have not located anything [responsive to RFP 16] that has not already been produced." ECF No. 65-1, Appx 018. The Government simply counters that the lack of records is "implausible" because "maintaining time and attendance records is a basic function of employers." ECF No. 65 at 20.

The Government misunderstands this court's August 2025 order. There, in response to the same complaint over the lack of individualized timekeeping records, the court ordered:

> *To the extent Plaintiffs can locate any more documents* that are responsive to Government Request No. 16, Plaintiffs must produce all documents relevant to the time spent on both construction projects in response to Government Request No. 16.

ECF No. 59 at 10 (emphasis added). It follows that Plaintiffs could only violate the order if they (1) located additional timekeeping records but (2) nevertheless failed to produce them. Yet the Government makes no effort to show that these records actually exist—it simply assumes that they *must* exist. To Plaintiffs' point, it is not implausible that they did not keep such individualized timekeeping records because they were not contractually required to do so. ECF No. 67 at 23–27. More fundamentally, the Government's argument amounts to a motion to compel the production of documents that Plaintiffs represent do not exist. But discovery rules require parties to produce documents within their possession, custody, or control; they do not require parties to create documents that never existed. *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.D.C. 2000) ("Rule 34 only requires a party to produce documents that are already in existence.") (citations omitted); *see also Utility Const. Co., Inc. v. United States*, 2024 WL 3405995, at *3 (Fed. Cl. July 12, 2024) (denying the Government's motion to compel because it did not show that its desired documents existed).

Absent evidence that additional responsive timekeeping records exist (e.g., references to such documents in other documents that the Government has obtained in discovery) and are in Plaintiffs' possession, custody, or control, the court cannot compel their production, much less impose sanctions for Plaintiffs' failure to produce them. The Government's motion for an adverse inference under RCFC 37(b)(2)(A) is therefore denied.

### B.    Motion to Compel

The Government's motion to compel, ECF No. 71, seeks the production of documents withheld by Plaintiffs on the basis of privilege. The Government's motion rests on three theories: (1) subject-matter waiver, (2) implied (or "at-issue") waiver, and (3) the crime-fraud exception. *Id*. at 4–10. As explained below, the Government has not made the requisite showing to establish privilege waiver under any of these theories. The motion to compel is therefore denied.

#### 1.    Legal Standards

Under RCFC 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "The attorney-client privilege protects the confidentiality of communications between attorney and client made for the purpose of obtaining legal advice." *Genentech, Inc. v. Intern. Trade Comm'n*, 122 F.3d 1409, 1415 (Fed. Cir. 1997) (citing *American Standard, Inc. v. Pfizer Inc.*, 828 F.2d 734, 745 (Fed. Cir. 1987)). A similar but distinct concept is the work-product doctrine, which protects "documents and tangible things that are prepared in anticipation of litigation." RCFC 26(b)(3)(A). A party may only discover attorney work-product if the materials are

otherwise discoverable and "the party shows that is has a substantial need for the materials . . . and cannot, without undue hardship, obtain their substantial equivalent by other means." *Id*.

The Government's motion to compel relies on three distinct privilege limitations. First, if a party waives attorney-client privilege or work-product protection, the waiver extends to undisclosed communications if "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together." Fed. R. Evid. 502(a) ("subject-matter waiver"). The rule is designed to prevent a party selectively "waiv[ing] its privilege for favorable advice while asserting its privilege on unfavorable advice," thereby using the privilege "as both a sword and a shield." *In re EchoStar Comms. Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) (citations omitted). As to the scope of a subject-matter waiver, there is no bright-line test. Rather, "courts weigh the circumstances of the disclosure, the nature of the legal advice sought and the prejudice of the parties of permitting or prohibiting further disclosures." *Fort James Corp. v. Solo Cup*, 412 F.3d 1340, 1349–50 (Fed. Cir. 2005).

Second, a party may waive attorney-client privilege by implication if the privileged communication is necessary to establish its claim or defense. *Eden Isle Marina, Inc. v. United States*, 89 Fed. Cl. 480, 502 (citing *Blue Lake Forest Prods., Inc. v. United States*, 75 Fed. Cl. 779, 783 (2007); *In re Echostar*, 448 F.3d at 1301) ("at-issue waiver"). Specifically, an at-issue waiver applies when:

> (1) [the] assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) [the] application of the privilege would have denied the opposing party access to information vital to [its] defense.

*Id.* (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).

Finally, the attorney-client privilege does not extend to "communications made for the purpose of getting advice for the commission of a fraud or crime." *Confidential Informant 59-05071 v. United States*, 121 Fed. Cl. 36, 46–47 (quoting *United States v. Zolin*, 491 U.S. 554, 563 (1989)) ("crime-fraud exception"). To invoke the crime-fraud exception, the challenging party must make a prima facie showing that the communication was made "in furtherance of a crime or fraud." *Id.* (quoting *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000)).

> 2. <u>The Government has failed to establish that Plaintiffs' privilege assertions are implicitly waived or barred by the crime-fraud exception.</u>

The Government's argument that Plaintiffs' privilege assertions are implicitly waived or barred by the crime-fraud exception are without merit.[7] As to the implicit waiver, the

---

[7] The Government raises numerous arguments in its reply brief that do not appear in its opening brief, including that (1) Plaintiffs' "privilege log is facially inadequate," ECF No. 74 at 5–6, and

Government claims that, by generally referring to their time impact analyses and certified claims in response to the Government's interrogatory about the causes of the delays, Plaintiffs "plac[ed] the truth of the statements in those documents at issue." ECF No. 71 at 5. But that is not an at-issue waiver. True, Plaintiffs have placed the causes of project delays at issue, but they have not affirmatively relied upon privileged communications to prove any of their claims or defenses. *See Blue Lake Forest*, 75 Fed. Cl. at 783 ("The at-issue waiver applies where the privilege holder makes assertions, the truth of which can only be assessed by examination of privileged communications.") (citations omitted). Plaintiffs point to their time impact analyses and certified claims themselves—not legal advice concerning those documents—as evidence of the factual and technical bases of their delay claims. Because there is no reliance on privileged communications to prove any claim or defense, there is no at-issue waiver.[8]

The Government also contends that any privilege over Plaintiffs' efforts in responding to its discovery requests is barred by the crime-fraud exception. In support, the Government points to (1) emails between Plaintiffs and their counsel purporting to show that Plaintiffs "sought to limit their responses to our discovery requests thereby suppressing evidence" and (2) this court's order, ECF No. 44, holding that the Government's fraud counterclaim was not "futile" under RCFC 15. ECF No. 71 at 8–9. But this argument conflates fundamentally distinct legal concepts. For one, discussions over the scope of a party's discovery responses are part of the ordinary provision of legal advice during litigation; such communications do not become discoverable merely because the opposing party characterizes them as an effort to "suppress evidence." Virtually every discovery dispute could be transformed into a crime-fraud inquiry if the rule were otherwise. Further, whether a party's fraud claim is deemed "futile" for RCFC 15 purposes is wholly irrelevant in determining whether any particular communication was made "in furtherance of a crime or fraud." *Confidential Informant 59-05071*, 121 Fed. Cl. at 47. The Government's argument bears little resemblance to the showing required to invoke the crime-fraud exception and therefore fails to satisfy its prima facie burden.

---

(2) because Plaintiffs have not argued that Dr. Bersing acted as their agent, "no privilege attaches to communications involving Dr. Bersing or his work product," *id*. at 7. The court declines to entertain arguments raised for the first time in reply. *Novosteel SA v. United States*, 284 F.3d 1261, 1273–74 (Fed. Cir. 2002). ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.") (emphasis in original).

[8] The Government advances two additional theories of at-issue waivers elsewhere in its motion. First, it contends that Plaintiffs implicitly waived privilege over their discovery efforts by representing that Mr. Hadjidimoulas's collection of evidence was "under the supervision of counsel." ECF No. 71 at 8 (citing ECF No. 65-1 at 84 (Hrg. Tr. at 42:1–4)). This argument fails as there is no nexus between Mr. Hadjidimoulas's document collection and any of Plaintiffs' claims or defenses. Notably, Plaintiffs have not raised advice of counsel as a defense to the Government's fraud counterclaim. Second, the Government argues that "plaintiffs put their legal fees at issue by seeking attorney's fees." ECF No. 71 at 10. This argument is mooted by the court's January 14, 2026, order granting Plaintiffs leave to amend their complaint to remove any claim for attorneys' fees. ECF No. 87.

3.    The Government's argument for a broad subject-matter waiver fails because it has not shown that fairness requires it.

The court now turns to the Government's remaining waiver argument: that Plaintiffs' waiver over communications involving Dr. Bersing effected a broader subject-matter waiver under Fed. R. Evid. 502(a). The Government contends that Plaintiffs waived privilege over all documents pertaining to: (1) delay and schedule analyses; (2) delay causes and mitigations; (3) the AHU delay and Plaintiffs responses to the Government's fraud counterclaim; (4) Plaintiffs' document collection efforts in response to the Government's requests; and (5) Plaintiffs' draft responses to the Government's interrogatories. ECF No. 71 at 4–5, 7–8. According to the Government, this extraordinarily broad waiver arose both from Plaintiffs' disclosure of confidential communications to Dr. Bersing and from Plaintiffs' subsequent stipulation that "any communications in which Dr. Bersing was included are not privileged." *Id.* at 4 (citing ECF No. 71-1 at Appx0003). The court is not persuaded.

First and foremost, there is no dispute that Plaintiffs intentionally waived privilege over their communications with Dr. Bersing. Whether that waiver occurred through Plaintiffs' inclusion of Dr. Bersing on otherwise confidential communications or through Plaintiffs' subsequent stipulation, the waiver was intentional.

The Government's argument for a broader subject-matter waiver nonetheless fails because it has not shown that fairness requires one. Recall that an intentional waiver of privilege extends beyond the disclosed communications only where the disclosed and undisclosed communications "ought in fairness to be considered together." Fed. R. Evid. 502(a). As a general matter, subject-matter waivers are "reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502 advisory committee's note. "The overarching goal" of the rule is to protect against a party "using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice." *In re Echostar*, 448 F.3d at 1303.

Those concerns are not present here. The Government does not contend, nor provide any reason to suggest, that Plaintiffs have selectively disclosed favorable communications involving Dr. Bersing while withholding unfavorable ones. To the contrary, Plaintiffs represent that they have produced "every communication for which Dr. Bersing was a sender or recipient, as well as all attorney-client and work-product materials relating to the drafting of the claims and to the preparation of responses to interrogatories and requests for production." ECF No. 73 at 17. Indeed, many of the documents that Plaintiffs produced appear to be strategically harmful to their position. *See* ECF No. 74 at 8. This is plainly not one those "unusual situations" where a party selectively waives privilege to tell one side of the story. Thus, this is not a case where fairness requires further disclosure of privileged information. *See In re United Workers of Am. Emp. Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994) (declining to find a broad subject-matter waiver where the documents disclosed were unhelpful to plaintiffs' position and a broad waiver would result in a strategic windfall to defendants).

The Government already possesses the complete universe of communications encompassed by Plaintiffs' waiver. Because there is no indication that Plaintiffs have used the

11

waiver to gain a tactical advantage, the court declines to extend it to otherwise privileged communications that neither involved Dr. Bersing nor were disclosed to him.

Because the Government has not met its burden of establishing privilege waiver under any theory, the Government's motion to compel is denied.

### III.    Conclusion

For the foregoing reasons, the court **DENIES** the Government's motion for an adverse inference, ECF No. 65, and **DENIES** the Government's motion to compel, ECF No. 71.

It is so ORDERED.

s/ Edward H. Meyers
Edward H. Meyers
Judge